CARMINE ESPOSITO, Appellant, *v.* AMERICAN RAILWAY EXPRESS COMPANY, Respondent.

First Department, December 17, 1920.

Motor vehicles — negligence — accident caused by unskillful operation of truck by helper contrary to master's orders — failure of licensed chauffeur to prevent helper from operating truck.

Where in an action to recover for personal injuries received by the plaintiff, whose pushcart was struck and overturned by the defendant's automobile truck, it appears that the defendant's truck, which was used to deliver express packages, was in charge of a licensed chauffeur who alone was authorized to drive the same and that a helper who rode upon the truck was forbidden by the defendant's rules from operating the truck, the defendant cannot be held liable for the negligence of the helper who was driving the truck at the time of the accident. But where it appears that the licensed chauffeur mounted the truck and allowed the helper to drive it unskillfully for a distance of sixty feet before the accident and did nothing to prevent the helper from operating the machine except to tell him to stop, a recovery can be predicated upon the negligence of the licensed chauffeur.

APPEAL by the plaintiff, Carmine Esposito, from a determination and order of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 25th day of May, 1920, reversing a judgment of the City Court of the City of New York in favor of the plaintiff.

*Leon Sanders* [*Jacob Zelenko* of counsel], for the appellant.

*Edward V. Conwell,* for the respondent.

DOWLING, J.:

Plaintiff on March 21, 1919, was standing on the sidewalk near the corner of One Hundred and Twelfth street and First avenue in the city of New York. Near him was his pushcart, close to the curb, from which he was selling fruit. While waiting on two customers, an auto truck belonging to defendant turned the corner and struck the pushcart, upsetting it and by the impact throwing plaintiff to the ground. The blow was a severe one, bending the axle of the cart and almost demolishing it. Plaintiff sustained injuries to his left knee, for which he recovered damages by the verdict for $750 in the City Court.

First Department, December, 1920.            [Vol. 194.

It appeared upon the trial that the defendant's auto truck on the day in question was in charge of defendant's chauffeur Gilroy. It was his duty to deliver the express packages being carried by defendant, and while he was so engaged his helper, McAdams, remained upon the truck. Shortly before the accident Gilroy was delivering a small box at a house in One Hundred and Twelfth street, between Second and Third avenues. McAdams, as helper, remained upon the truck, on the seat thereof, as was his duty. But instead of simply guarding the truck, he made up his mind to drive the truck around the block for the reason, as he testified, that he intended to get his license and was trying to see how he could make out. He claims he had reached the corner of One Hundred and Twelfth street and First avenue when Gilroy " hopped on the car " and ordered him to stop. He claims he swung the car to the left and again to the right to avoid a collision with a " fellow with a pushcart," coming up on the north side of the street who " blew his horn." The car swung in both directions before it could be stopped, McAdams saying that he used the foot brake and Gilroy the emergency brake. McAdams testified that after Gilroy jumped on the truck the time that elapsed before the accident occurred was half a second, or a minute, or two minutes; he gave all these periods as being correct. He admitted that by putting on the emergency brakes the car could surely have been stopped within three feet. He says that when Gilroy jumped on the truck it was going very slowly and that the accident happened just as it was turning the corner of One Hundred and Twelfth street. He says that Gilroy got on the seat and sat there on the right side, with McAdams on the left, until the truck turned into First avenue, and swung around with its wheels locked to the west side of the sidewalk. All this time, according to McAdams, all that Gilroy did was to tell him to stop; he never touched the emergency brake during the irregular and dangerous course of the truck, but allowed McAdams to run the car in his obviously unskillful way, until the truck was just about to strike the pushcart, when he jammed on the emergency brake. Gilroy claimed that he jumped on the running board of the truck just as it was turning the corner and as McAdams " seemed to swing the car towards the curb " he hit the first pushcart, which struck the one ahead of it, and the

latter another in turn, all three being overturned, and as they fell Gilroy says he grabbed the emergency brake as soon as he could. He says McAdams pushed his foot on the foot brake and the car stalled. McAdams said it stalled when Gilroy put on the emergency brake. Gilroy admits that after he got on the truck it wobbled and McAdams had no control of it. Though Gilroy claims that he put on the brake as soon as he could, he admits that after he jumped on the truck and saw the way McAdams was attempting to drive it, he did not take the wheel from him nor attempt so to do, but simply shouted to him to stop, as he was turning the corner. Then he reached to the emergency brake. The truck was going less than four miles an hour he swears, but according to his own admission it traveled sixty feet with McAdams at the wheel before Gilroy attempted to apply the emergency brake and then only as the collision was inevitable. Concededly, McAdams had no right to drive this car, for defendant had issued strict orders, properly promulgated and brought to the personal attention of McAdams and Gilroy, that no one should drive a motor car who had not received a State license and in addition been passed by the defendant's instructor and examiner; and that no helper should operate a truck except on written permission of defendant's supervisor. I fully agree with the conclusion reached by the learned Appellate Term that the defendant was not liable for the negligence of McAdams. But that was not the theory upon which plaintiff recovered his judgment herein. On the contrary, the learned trial court charged the jury as follows: " It is the claim of the defendant in this action that the accident, unfortunate as it may have been to the plaintiff, was not due to any negligence attributable to it, in other words, the defendant takes the position that it is not liable for the negligence of Mr. McAdams; and I say to you, as a matter of law, that if this accident happened at any time after McAdams had started that truck from any point between, or premises between 3d and 2d Avenues and before Mr. Gilroy boarded it, under the proof in this case, the defendant was not liable for any negligence of McAdams. But the negligence charged against the defendant and relied upon, as I understand it, by the plaintiff, is that after Mr. Gilroy overtook that car and either took a

position upon its running board, or a position upon the driver's seat, that from that time the defendant company not alone was chargeable with the negligence of Gilroy, but with the negligence of the helper, McAdams; and that is the question I am about to submit to you for determination.

" In this case there is no claim that by any reason of negligence on his own part the plaintiff caused or contributed to the accident. So that the question that you are called upon to determine is whether or not an employee in control of the defendant's automobile, concerned in and doing the business of the defendant, was negligent and that the negligence caused the accident in question. Therefore, as I say, before you can charge this defendant with liability, you must find from the evidence in this case that the accident was caused by negligence attributable to the defendant. The defendant unquestionably is liable for any negligence that may have caused this accident with which you may find Mr. Gilroy chargeable; and, if in this case, you should find that notwithstanding the fact that Mr. Gilroy secured a position upon that automobile as it was entering 1st Avenue at 112th Street, he did nothing to prevent the collision and permitted the continued operation of the defendant's car by McAdams, then for that negligence on his part to comply with the requirements of the defendant company, if it caused or aided in causing the accident in question, the defendant is answerable. In other words, gentlemen, in simple language, I say to you that beyond question, as a matter of law, the defendant is answerable for any negligence of Mr. Gilroy, its chauffeur, that may have caused the accident in question."

And further: " The particular negligence, charged against the defendant by the plaintiff in this action is that Mr. Gilroy, its chauffeur, after having secured a position upon the car, failed to exercise that ordinary care that a reasonably careful chauffeur would under the circumstances, and the same conditions there existing, and that by reason of the lack of that care, this plaintiff was injured."

The jury, upon the testimony, were justified in finding that defendant's chauffeur, after he had jumped upon this truck and assumed his seat thereon, allowed McAdams (who to his knowledge had no right to drive the truck) to drive it for a

distance of sixty feet, proceeding slowly, but so irregularly and unskillful, that it swerved from side to side, and did nothing save to tell McAdams to stop. Then after allowing the truck to so proceed for a period which may have been two minutes according to McAdams' testimony, Gilroy only applied the emergency brakes as a collision with the pushcarts was inevitable. Instead of putting on the emergency brake as soon as he jumped on the truck, he waited for as much as two minutes. Had he done so at once, the truck would have been stopped within three feet; as a matter of fact it was not stopped till it had run sixty feet. This, in my opinion, constituted negligence upon the part of defendant's chauffeur, Gilroy, for which it was liable.

The determination of the Appellate Term should be reversed and the judgment of the City Court reinstated, with costs to appellant in this court and in the Appellate Term.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Determination reversed and judgment of City Court affirmed, with costs to appellant in this court and in the Appellate Term.